KAREN P. HEWITT
United States Attorney
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
California Bar. No. 201352
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Christopher.M.Alexander@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CESAR RICARDO FIMBRES-PEREZ (1),<br>OLIVIA FIMBRES-PEREZ (2),<br>MIGUEL FIMBRES-PEREZ (3),<br><br>Defendants. | Criminal Case No. 08CR0021-DMS<br><br>HEARING DATE: April 30, 2008<br>TIME: 1:30 p.m.<br><br>UNITED STATES' MOTIONS IN LIMINE TO:<br>(A) PRECLUDE EXPERT TESTIMONY BY THE DEFENSE;<br>(B) ADMIT 404(B) EVIDENCE;<br>(C) EXCLUDE ALL WITNESSES EXCEPT CASE AGENT;<br>(D) PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, ETC.;<br>(E) PRECLUDE SELF-SERVING HEARSAY;<br>(F) LIMIT CHARACTER EVIDENCE;<br>(G) ADMIT EVIDENCE OF MANNER OF ENTRY AND FLIGHT;<br>(H) PRECLUDE EVIDENCE OF DURESS AND NECESSITY;<br>(I) ADMIT DEMEANOR EVIDENCE;<br>(J) ADMIT CO-CONSPIRATOR STATEMENTS;<br>(K) ADMIT A-FILE DOCUMENTS;<br>(L) ADMIT TESTIMONY BY A-FILE CUSTODIAN; AND<br>(M) RENEW ITS MOTION FOR RECIPROCAL DISCOVERY.<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States Attorney, and hereby files its Motions in Limine. These Motions are based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On January 2, 2008, a federal grand jury in the Southern District of California returned an Indictment charging Defendant Cesar Ricardo Fimbres-Perez ("Cesar Fimbres") in Count One with aiding the entry of an alien with a prior aggravated felony conviction into the United States in violation of 8 U.S.C. § 1327; Defendant Olivia Fimbres ("Olivia Fimbres") was charged in Counts Two and Three with assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and charged in Count Six with aiding the escape of Miguel Fimbres-Perez in violation of 18 U.S.C. § 751(a); and Defendant Miguel Fimbres-Perez ("Miguel Fimbres") was charged in Count Four with assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1) and charged in Count Five with being a deported alien attempting to enter the United States after deportation in violation of 8 U.S.C. § 1326 (collectively, "Defendants"). On January 3, 2008, Defendants Cesar Fimbres and Olivia Fimbres were arraigned on the Indictment and entered not guilty pleas. Defendant Miguel Fimbres is a fugitive. The Court set a motion hearing date for February 1, 2008.

On January 17, 2008, Defendant Olivia Fimbres filed a motion to compel discovery. On January 18, 2008, Defendant Cesar Fimbres filed motions to compel discovery, dismiss, compel production of the grand jury transcripts, and for a bill of particulars.

On February 1, 2008, the Court continued the matter to February 15, 2008 so that the Parties could address discovery issues. On February 15, 2008, the United States raised the issue of a conflict of interest. The Court requested briefing. On March 14, 2008, the Court declined to relieve Federal Defenders. Additionally, the Court denied Defendant Cesar Fimbres' motion to produce grand jury transcripts.

Shortly thereafter, Defendant Cesar Fimbres filed a motion to sever. The United States did not oppose this request. The Court granted severance on April 18, 2008. The Court eventually set a motion

in limine date of April 30, 2008 and a trial date of May 5, 2008. The United States now files the following motions in limine.

## II

## STATEMENT OF FACTS

### A. THE APPREHENSION

On December 15, 2007, Border Patrol Agents Luis Ramos and Eric Vito were assigned to an area known as Whiskey 15 position at the Imperial Beach area of operations. Border Patrol Agent Leslie H. Pino was assigned to the plainclothes Rapid Engagement Support Enforcement Team ("RESET") and was also working in the Whiskey 15 area. All three agents were at Border Field State Park observing a Border Angels rally.

The Whiskey 15 area and Border Field State Park are approximately five miles west of the San Ysidro Port of Entry and adjacent to the United States/Mexico International border. The western border of the Whiskey 15 area and Border Field State park is the Pacific Ocean.

At approximately 5:30 p.m., Agent Ramos observed two individuals enter into the United States without inspection. The two individuals walked a few yards into the United States and then returned to Mexico. The two individuals repeated their actions twice before illegally entering a third time and continuing northbound along the shoreline. Agent Ramos observed that one of the individuals was wearing a yellow striped jacket. Agent Ramos relayed this information via agency radio to Agent Vito and continued to observe the two individuals walking up the beach.

Agent Vito responded to the shoreline to intercept the two individuals but his vehicle became disabled about ten yards north of the United States/Mexico International Boundary. Agent Vito then responded to the two individuals on foot and encountered them directly west of the Border Field State park lower parking lot. The parking lot is approximately 150 yards north of the United States/Mexico International Boundary. Agent Pino also responded to the shoreline and assisted Agent Vito. The two individuals claimed to be "Messing around with the Border Patrol" and did not mean any harm. Both individuals stated that they were United States citizens born in San Diego, California and wanted to return to Mexico. Both individuals spoke fluently in the English language.

Both individuals were escorted to the Border Field State Park lower parking lot in order to perform record checks. The agents and both individuals were met at the lower parking lot by Agent Ramos. Agent Ramos began to interview one of the two individuals later identified as Cesar Fimbres. Agent Vito began to interview the other individual later identified as Miguel Fimbres. Due to the fact that Agent Pino had left his vehicle at Border Field State park near the United States/Mexico International boundary, there was a large crowd of people on the south side of the fence due to the rally, and the fact that Agent Vito's agency vehicle was disabled ten yards north of the United States/Mexico International boundary Agent Pino returned to his vehicle. Agent Pino secured his vehicle and kept watch over Agent Vito's disabled vehicle.

While being interview by Agent Ramos, Miguel Fimbres began to walk south towards Mexico. Agent Ramos ordered Miguel Fimbres to stop walking south and return to the park's lower parking lot. Miguel Fimbres refused to comply with Agent Ramos' order and stated that he was going to talk to his wife who was in Mexico. Agent Ramos then physically attempted to prevent Miguel Fimbres from returning to Mexico by wrestling Miguel Fimbres to the ground. Miguel Fimbres being a much bigger individual was able to escape Agent Ramos' grasp by getting to his feet, slipping out of his jacket, and running south towards Mexico. Agent Ramos relayed to Agent Pino information concerning the fleeing individual.

Park Ranger Jonathan Irwin of the State of California Department of Parks and Recreation was also present at the Border Field State Park and was observing the two Border Patrol Agents and the Fimbres brothers at the lower parking lot. Irwin was conducting his duties as a park ranger and was preparing to close the park to all civilian traffic. Ranger Irwin observed Agent Ramos' attempts to restrain Miguel Fimbres and observed Miguel Fimbres run southbound towards Mexico. Ranger Irwin pursued Miguel Fimbres in his department issued truck and managed to park in front of the fleeing Miguel Fimbres about twenty feet north of the United States/Mexico International boundary.

Agent Pino responded on foot to the radio transmission that Miguel Fimbres was fleeing the area. Agent Pino intercepted Miguel Fimbres as he ran around the back of Ranger Irwin's truck. As Miguel Fimbres came around the back of the truck, he started to slip and placed his hand on the sand. Miguel Fimbres then assumed a fighting stance. As Agent Pino attempted to apprehend Miguel Fimbres, he

head butted Agent Pino in the chest and started to drag Agent Pino towards the United States/Mexico International boundary. Ranger Irwin exited his truck and assisted Agent Pino. However, Miguel Fimbres continued to struggle and would not comply with commands to stop resisting. Miguel Fimbres continued to crawl and slowly inched his way closer to the United States/Mexico International boundary.

Agent Ramos arrived on foot to assist in the arrest of Miguel Fimbres. Miguel Fimbres continued to struggle with both agents and the park ranger. At this point a female, later identified as Olivia Fimbres, entered the United States without inspection by running across the United States/Mexico International boundary. Olivia Fimbres started to yell "Leave him alone. Let him go back to Mexico. He's my husband." Olivia Fimbres also started to pull both agents and the park ranger from Miguel Fimbres. Olivia Fimbres began to assist Miguel Fimbres in his struggle by pushing him south and interfering with the two agents and the park ranger. Agents Pino and Ramos both pulled Olivia Fimbres off of her husband numerous times and ordered her to stop interfering with federal agents while attempting to perform their official duties. Olivia Fimbres disobeyed the agents' commands to stay away from them and continued to pull them off of Miguel Fimbres. As the agents and the park ranger tried to pull Miguel Fimbres away from the fence, Olivia Fimbres grabbed Agent Pino's right arm numerous times. This cause Agent Pino to lose his grip on Miguel Fimbres. Olivia Fimbres also attempted to push Agent Pino and Agent Ramos away from Miguel Fimbres.

This made it impossible for the agents to pull Miguel Fimbres away from the fence. Because Miguel Fimbres continued to struggle and Olivia Fimbres was interfering with his arrest, Agent Pino deployed his agency issued oleoresin capsicum spray into the face of Miguel Fimbres. The oleoresin capsicum spray did not have any immediate effect on Miguel Fimbres and he continued to struggle south towards Mexico. Agent Pino also attempted to spray his oleoresin capsicum spray into the eyes of Olivia Fimbres, but the can was empty.

At the same time that Olivia Fimbres arrived at the scene, approximately a dozen other individuals from Mexico also arrived. The onlookers began to scream at the agents attempting to arrest Miguel Fimbres. When Miguel Fimbres grabbed the metal pillars that are on the United States/Mexico International boundary, the onlookers grabbed his arms and tried to pull him back into Mexico. A short

tug of war ensued between the two agents, park ranger and the onlookers before Miguel Fimbres was pulled into Mexico.

Once Miguel Fimbres returned to Mexico, Agent Pino placed Olivia Fimbres into custody for impeding federal agents attempting to arrest Miguel Fimbres.

Olivia Fimbres and Cesar Fimbres were transported to the Imperial Beach Border Patrol Station for processing.

At the station, agents found through record checks that the individual who returned to Mexico was Miguel Fimbres. Miguel Fimbres had given his name and date of birth to agents before running back to Mexico. Miguel Fimbres has an extensive criminal record and immigration history.

Agents also located a California drivers license under the name Miguel Mauricio Fimbres. The picture associated with CA A5512603 was positively identified by Agents Pino, Ramos, and Vito as the individual that was observed entering into the United States illegally, spoke with agents, and ultimately returned to Mexico after struggling with agents.

**B. CESAR FIMBRES' STATEMENTS**

Field Operations Supervisor Brian Axthelm read Cesar Fimbres his Miranda rights at approximately 11:00 p.m. as witnessed by Border Patrol Agent Joel Lara.

**C. CESAR FIMBRES' CRIMINAL HISTORY**

Cesar Fimbres has two outstanding warrants from San Diego County. The warrants were for possess of a controlled substance in violation of Health and Safety Code 11377(A) and possess control substance paraphernalia in violation of Health and Safety Code 11364.

**D. OLIVIA FIMBRES' STATEMENTS**

Field Operations Supervisor Brian Axthelm read Olivia Fimbres her Miranda rights at approximately 11:47 p.m. as witnessed by Border Patrol Agent Joel Lara.

**E. OLIVIA FIMBRES' CRIMINAL HISTORY**

Olivia Fimbres has no identifiable criminal history.

/ / /

/ / /

**F. MIGUEL FIMBRES' CRIMINAL AND IMMIGRATION HISTORY**

Miguel Fimbres' criminal history dates back almost 20 years. Without discussing every conviction, Defendant was convicted of importation of marijuana in violation of 21 U.S.C. §§ 952 and 960 in 1989. In 1992, he was convicted on voluntary manslaughter and child cruelty. He received a more than 11 years in prison for this conviction. Most recently, in 2001, Defendant was convicted of being a deported alien found in the United States in violation of 8 U.S.C. § 1326. He received 37 months in prison and three years supervised release.

Defendant was ordered deported on August 27, 1999.

**III**

**THE COURT SHOULD PRECLUDE EXPERT TESTIMONY BY THE DEFENSE**

Pursuant to Federal Rules of Criminal Procedure 12.2 and 16(b), Defendant must permit the United States to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendants, which Defendants intend to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendants intend to call at trial. Moreover, Defendant disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. Defendant has provided neither proper notice of any expert witness, nor any reports by expert witnesses regarding his or her anticipated testimony. Accordingly, Defendant should not be permitted to introduce any expert testimony.

**IV**

**THE UNITED STATES MAY USE 404(B) EVIDENCE**

Defendant was provided with his criminal history and other documents by February 5, 2008. Defendant Cesar Fimbres had an outstanding warrant for his arrest.

Rule 404(b) prohibits evidence of prior crimes or bad acts merely to prove bad character, but allows it in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The United States may use such prior bad acts if it establishes its relevance to an actual issue in the case. United States v. Hodges, 770 F.2d 1475, 1479 (9th Cir. 1985).

Rule 404(b) employs a four-prong test for proffered evidence. Extrinsic evidence of prior misconduct may be admitted if it (1) tends to prove a material element; (2) is not too remote in time; (3) is sufficient to support a finding that the defendant committed that other act; and (4) in some cases, is similar to the offense charged. United States v. Bibo-Rodriguez, 922 F.2d 1398, 1400-01 (9th Cir. 1991). In addition, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. Id.

Defendant Cesar Fimbres is charged with aiding the entry of certain aliens. Cesar Fimbres was living in Mexico prior to aiding Miguel Fimbres enter the United States. Cesar Fimbres was living in Mexico due to his outstanding warrant. Cesar Fimbres' warrant makes it more likely that he was knowingly aiding the entry of Miguel Fimbres since Cesar Fimbres was risking arrest to do so. He was not simply messing with Border Patrol. Thus, this evidence should be admitted pursuant to Rule 404(b) to prove knowledge, intent and absence of mistake or accident.

Applying the four-prong test, such evidence of prior misconduct should be admitted. First, it tends to prove a material element of the offense at hand. Specifically, it shows that Defendant had the requisite knowledge and intent to violate the law by smuggling at the international border. The Ninth Circuit has held that evidence of a prior similar offense is highly relevant and admissible to show the requisite knowledge, criminal intent, and lack of innocent purpose. See United States v. Ramirez-Jiminez, 967 F.2d 1321, 1325-26 (9th Cir. 1992) (affirming the admission of evidence in an alien smuggling prosecution that the defendant had been observed at a residence used in the transportation of illegal aliens); United States v. Winn, 767 F.2d 527, 530 (9th Cir. 1985) (affirming the admission of a prior alien smuggling conviction to prove knowledge or intent in an alien smuggling prosecution); United States v. Longoria, 624 F.2d 66, 69 (9th Cir. 1980) (affirming the admission of a prior alien smuggling conviction to prove knowledge or intent in an alien smuggling prosecution); United States v. Castro-Castro, 464 F.2d 336, 337 (9th Cir. 1972) (admitting evidence of prior drug smuggling arrest, even after the defendant was acquitted at trial).

Second, the events are not remote in time, rather, it took place close in time to the charged offense. See United States v. Rude, 88 F.3d 1538, 1550 (9th Cir. 1996) (eight years not too remote); United States v. Houser, 929 F.2d 1369, 1373 (9th Cir. 1991) (four years not too remote); United States

v. Ono, 918 F.2d 1462, 1465 n.2 (9th Cir. 1990) (seven-year-old conviction admissible); United States v. Ross, 886 F.2d 264, 267 (9th Cir. 1989) (thirteen-year-old conviction admissible); United States v. Spillone, 879 F.2d 514, 518 (9th Cir. 1989) (convictions over ten years old not too remote).

Third, the evidence with his information on the warrant would be sufficient to support a finding that there was a warrant for Cesar Fimbres arrest. See Huddleston v. United States, 485 U.S. 681, 690 (1988) (holding that similar "other acts" are admissible if, using a preponderance of the evidence standard, there is evidence to support a jury's finding that the defendant committed the similar act, and that the other act is probative of a material issue other than the defendant's character. ). The United States will present testimony and documentation to establish the nature of the conduct and Cesar Fimbres' identity as the person involved in that warrant.

Fourth, although the outstanding warrant is not entirely identical to the charged offense, it does provide some evidence of knowledge in the charged offense. Cesar Fimbres' claim that he was messing around with Border Patrol is less likely given his outstanding warrant status. This amounts to a sufficient similarity to permit admission. See Ramirez-Jiminez, 967 F.2d at 1326 ("prior act need not be similar to the charged act as long as the prior act was one which would tend to make the existence of the defendant's knowledge more probable than it would be without the evidence").

Finally, under Rule 403, the probative value of a prior bad act must not be "substantially outweighed by the danger of unfair prejudice . . . ." Here, where Defendant is charged with aiding the entry of certain aliens and there is evidence he knew that he had an outstanding warrant, the probative value of such prior bad act is strong and outweighs any risk of prejudice against Defendant. While the evidence may carry with it some degree of prejudice, "[r]elevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." United States v. Naranjo, 710 F.2d 1465, 1469 (10th Cir. 1983). Thus, the United States respectfully requests that it be permitted to enter evidence of Cesar Fimbres' outstanding warrant for arrest.

/ / /

/ / /

/ / /

V

**THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE UNITED STATES' CASE AGENT**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be essential to presentation of the trial. As such, the case agent's presence at trial is necessary to the United States.

The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

VI

**THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

Evidence of, and thus argument referring to, Defendant's health, age, finances, education and potential punishment is inadmissible and improper.

"Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition).[1/]

Moreover, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). Any mention of penalty or felony status is irrelevant as it sheds no light on the Defendant's guilt or innocence. Therefore, the United States respectfully requests this Court to preclude any mention of possible punishment at any point in this trial.

---

[1/] Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

Reference to Defendant's health, age, finances, education and potential punishment may be relevant at sentencing. However, in an alien smuggling trial, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

**VII**

**SELF-SERVING HEARSAY IS INADMISSIBLE**

Defendant's out of court statements are inadmissible hearsay when offered by Defendant through witnesses. Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the proponent of the evidence, and the evidence is not being offered against him. Defendant cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

In this case, the United States anticipates that Defendant may attempt to have the United States' witnesses testify about certain statements which Defendant made to inspectors. Thus, the United States moves, in limine, to prohibit Defendant from eliciting self-serving hearsay from: (a) the United States' witnesses or (b) defense witnesses.

**VIII**

**THE COURT SHOULD LIMIT CHARACTER EVIDENCE**

The United States anticipates that Defendant may improperly attempt to introduce testimony regarding Defendant's specific acts of prior good conduct. Testimony as to multiple instances of good conduct violates Federal Rule of Evidence 405(a). United States v. Barry, 841 F.2d 1400, 1403 (9th Cir. 1987); Government of Virgin Islands v. Grant, 775 F.2d 508, 512 (3d Cir. 1985).

Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except "evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same."

A character witness can not offer specific instances of conduct by the defendant which would tend to support the reputation of the defendant. United States v. Giese, 597 F.2d 1170 (9th Cir. 1979) (character witnesses must restrict their direct testimony to appraisals of defendant's reputation); United States v. Hedgecorth, 873 F.2d 1307 (9th Cir. 1989) ("While a defendant may show a characteristic for

lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible").

In interpreting the permissible scope of character evidence under Rule 404(a), the Ninth Circuit has ruled that presentation of witnesses to testify about a defendant's character for "law abidingness" and honesty is permissible. The appellate court, however, has held that asking a defense witness about the defendant's propensity to engage in a specific type of criminal activity is not allowed under Rule 404(a). See United States v. Diaz, 961 F.2d 1417 (9th Cir. 1992) (holding that it is impermissible to ask a character witness about the defendant's propensity to engage in large scale drug dealing).

Thus, the United States hereby moves in limine to prohibit Defendant from introducing testimony from any character witness about (a) a specific instance of Defendant's conduct, and (b) Defendant's propensity to be involved in alien smuggling.

## IX

## EVIDENCE OF THE MANNER OF ENTRY AND FLIGHT SHOULD BE ADMITTED

The United States should be permitted to present evidence regarding the manner of entry into the United States by Defendant and the alien. Additionally, the Court should admit evidence of the alien's flight. The probative value of such evidence clearly outweighs any risk of prejudice.

Under Rule 401, relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states that all relevant evidence is admissible.

In the instant case, the manner of transport is extremely relevant in that it relates to how Defendant aided the alien's entry. The United States requests that evidence regarding the manner of transport be permitted as it directly bears on the crime of aiding the entry of certain aliens and the question of Defendant's knowledge.

Additionally, this evidence is admissible since it is "inextricably intertwined" with the charged offense. See United States v. Beckman, 298 F.3d 788, 790 (9th Cir. 2002) (admitting, in a drug importation case, a witness' testimony about the defendant's prior drug runs under both Rule 404(b) and as being "inextricably intertwined" with the charged offense). The Ninth Circuit has recognized two categories of evidence that may be considered "inextricably intertwined" with a charged offense and

therefore admitted without regard to Rule 404(b). See United States v. DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004). First, evidence of prior acts may be admitted if the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge." Id. Second, prior act evidence may be admitted "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." Id.

Here, the evidence is part of the basis for the criminal charges. The evidence also allows for a comprehensible story as to why Defendant knew he was aiding the entry of certain aliens.

## X

## THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY

A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and precluding evidence thereof if the defense is found to be insufficient. Fed. R. Crim. P. 12(b) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982) (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim. P. 12(e).

Generally, motions are capable of pretrial determination if they raise issues of law, rather than issues of fact. United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996) (addressing duress). Similarly, a district court may preclude a necessity defense where"the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195; United States v. Arellano-Rivera, 244 F.3d 1119, 1126 (9th Cir. 2001) (holding that the defendant's subjective belief that a legal alternative might be unavailable to him was insufficient to sustain his necessity defense); United States v. Perdomo-Espana, No. 07-50232, 2008 U.S. App. LEXIS 8355, at *14 (9th Cir. Apr. 14, 2008) (holding that "the test for entitlement to a defense of necessity is objective").

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**XI**

**DEMEANOR EVIDENCE SHOULD BE ADMITTED**

Evidence regarding a defendant's demeanor and physical appearance is admissible as circumstantial evidence that is helpful to the jury's determination as to whether a defendant knew he was aiding the entry of certain aliens. Fed. R. Evid. 701; United States v. Angwin, 271 F.3d 786, 797 n.2 (9th Cir. 2001) (holding in an alien smuggling prosecution that "[g]uilty intent can be inferred from the

defendant's conduct and other circumstantial evidence, such as the defendant driving a vehicle full of contraband, lying or giving inconsistent statements to government agents, and exhibiting telltale signs of nervousness."); United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000) (holding that a jury may consider a defendant's nervousness during questioning at Calexico port of entry); United States v. Fuentes-Cariaga, 209 F.3d 1140, 1144 (9th Cir. 2000) (holding that it is within the ordinary province of jurors to draw inferences from an undisputed fact such as a defendant's nervousness at Calexico port of entry); United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir. 1990) (holding that a jury could infer guilty knowledge from a defendant's apparent nervousness and anxiety during airport inspection); United States v. Lui, 941 F.2d 844, 848 (9th Cir. 1991) (holding that a jury could consider guilty knowledge from a defendant's acting disinterested during airport inspection).

Here, witnesses for the United States may properly testify to Defendant's demeanor and physical appearance, as they have personal knowledge based upon their observations of Defendant.

## XII

## STATEMENTS CONCERNING THE SMUGGLING ARRANGEMENTS ARE ADMISSIBLE

A witness should be permitted to testify regarding statements made by Defendant and the alien about the smuggling arrangements. Specifically, the witness is expected to testify that they overheard the smuggling arrangements.

While an out of court statement offered for the truth of the matter asserted is normally considered hearsay (see Fed. R. Evid 801(c)), the Federal Rules of Evidence and the United States Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), recognize that some out of court statements are non-hearsay, and thus, are admissible. See Fed. R. Evid. 801(d); Crawford, 541 U.S. at 56 (describing non-testimonial exceptions such as business records and statements in furtherance of a conspiracy). Moreover, admissions by a party-opponent are not hearsay.

The Federal Rules of Evidence specifically define statements made by a coconspirator of a party during the course and in furtherance of a conspiracy as non-hearsay. See Fed. R. Evid. 801(d)(2)(E). Such statements are not hearsay and were deemed non-testimonial by the Supreme Court in Crawford. In fact, the Crawford decision specifically identifies co-conspirator statements as non-testimonial, citing

its prior decision in United States v. Bourjaily, 483 U.S. 171 (1987), in which the Court held that even though the defendant had no opportunity to cross examine the declarant at the time that he made the statements and the declarant was unavailable to testify at trial, the admission of the declarant's statements against the defendant did not violate the Confrontation Clause. Crawford, 541 U.S. at 57. The Supreme Court approved its prior holding regarding co-conspirator statements, citing Bourjaily as an example of an earlier case that was consistent with the principal that the Confrontation Clause permits the admission of non-testimonial statements in the absence of a prior opportunity for cross examination. Crawford, 541 U.S. at 56.

In addition, several Circuits have allowed such co-conspirator statements post-Crawford. See United States v. Cianci, 378 F.3d 71, 101-02 (1st Cir. 2004); United States v. Sagat, 377 F.3d 223, 229 (2d Cir. 2004); United States v. Mickelson, 378 F.3d 810, 819-20 (8th Cir. 2004). Since the Ninth Circuit has not yet ruled on this specific issue in any published decision, this Court may look to other jurisdictions for guidance. See United States v. Lindberg, 220 F.3d 1120, 1123 (9th Cir. 2000).

Co-conspirator statements are admissible under Rule 801(d)(2)(E) if the United States demonstrates that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy. See Bourjaily, 483 U.S. at 175; United States v. Peralta, 941 F.2d 1003, 1007 (9th Cir. 1991). The existence of a conspiracy and defendant's involvement in the conspiracy are questions of fact that must be resolved by the Court by a preponderance of the evidence. Fed. R. Evid. 104; Bourjaily, 483 U.S. at 175. "Furtherance of a conspiracy" is to be interpreted broadly. United States v. Manfre, 368 F.3d 832, 838 (8th Cir. 2004).

The United States is not required to charge the defendant with conspiracy, United States v. Layton, 855 F.2d 1388, 1398 (9th Cir. 1988), or charge the declarant as a co-defendant in any conspiracy in order to admit co-conspirator statements. United States v. Jones, 542 F.2d 186, 202-03 (4th Cir. 1976). Further, upon joining the conspiracy, earlier statements made by co-conspirators after inception of the conspiracy become admissible against the defendant. United States v. LeRoux, 738 F.2d 943, 949-50 (8th Cir. 1984). In United States v. United States Gypsum Co., 333 U.S. 364, 393 (1948), the Supreme Court held that "the declarations and acts of various members, even though made

prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of coconspirators in aid of the conspiracy." In other words, a defendant who joined the conspiracy at a later date, took the conspiracy as he found it. United States v. Hickey, 360 F.2d 127, 140 (7th Cir. 1966).

The Court may consider the content of the statements in determining whether the co-conspirator statement is admissible. Bourjaily, 483 U.S. at 180. Further, once the Court has ruled that the statement meets the evidentiary requirements for admission under the 801(d)(2)(E), the Court need not make an additional inquiry as to whether the declarant is unavailable or whether there is any independent indicia of reliability. Id. at 182-184.

**1. Whether a Conspiracy Existed**

In this case, the conspiracy consists of the efforts made by known and unknown persons, including Defendant, the alien, and others, to smuggle a certain alien into the United States. The United States anticipates that the witness will testify that Defendant and Miguel Fimbres arranged for Miguel Fimbres to be smuggled into the United States. The United States further anticipates that the witness will testify that the co-conspirators met in Mexico before the offense conduct.

**2. Whether Defendant and the Declarant Were Members of the Conspiracy**

The United States anticipates that the testimony of the witness at trial will demonstrate that Defendant and others were part of the conspiracy. Specifically, the United States anticipates that the witness will explain that the co-conspirators made arrangements to smuggle Miguel Fimbres into the United States. Without Defendant's action of aiding the alien across the international border, the object of the conspiracy--smuggling the alien into the United States--would have failed.

**3. The Co-Conspirator Statements Were Made During the Course of, and in Furtherance of the Conspiracy**

The co-conspirator statements that the United States contends are non-hearsay involve the smuggling arrangements made by Defendant and the alien. The United States anticipates that the witness will testify at trial that Miguel Fimbres was going to be smuggled into the United States. Thus, the smuggling arrangements were an integral component of the smuggling conspiracy and such statements were made in furtherance of the smuggling venture.

Although some Defendant may have joined the conspiracy after the alien made the arrangements, the statements are still admissible against Defendant because the conspiracy already existed when the statements were made. See United States Gypsum Co., 333 U.S. at 393; LeRoux, 738 F.2d at 949-950; Hickey, 360 F.2d at 140.

As such, all statements regarding the arrangements made by the co-conspirators should be admissible against Defendant.

**XIII**

**THE COURT SHOULD ADMIT A-FILE DOCUMENTS**

The United States intends to offer documents from the Department of Homeland Security's "A-File" that corresponds to Miguel Fimbres' name in order to establish his alienage, prior deportations, and that he was subsequently apprehended in the United States without having sought or obtained authorization from the Secretary of Homeland Security. The documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6).

The Ninth Circuit addressed the admissibility of A-File documents in United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (denying a challenge based upon Crawford v. Washington, 541 U.S. 36 (2004)). The appellate court held that "the warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter." Id.; see also United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997).

In Loyola-Dominguez, the defendant appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A-File." Id. at 1317. The district court had admitted: (1) a prior warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) an order to show cause. The defendant argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his argument, holding that the documents were properly admitted as public records. Id. at 1318. The Court first noted that documents from a defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement

exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The Court also held that such documents are self-authenticating and, therefore, do not require an independent foundation. Id.

Courts in this Circuit have consistently held that documents from a defendant's immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage and prior deportation. See United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of deportation documents to prove alienage); United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence); United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records, noting that records would also be admissible as public records); United States v. Mendoza-Torres, 285 F. Supp. 629, 631 (D. Ariz. 1968) (admitting warrant of deportation); see also United States v. Ray, 920 F.2d 562, 566 (9th Cir. 1990) (admitting welfare documents under the business records exception).

Defendant may attempt to distinguish Hernandez-Herrera. However, the Ninth Circuit could not be more clear when it held that "deportation documents are admissible to prove alienage under the public records exception to the hearsay rule." Hernandez-Herrera, 273 F.3d at 1218.

The Ninth Circuit has made clear that deportation documents are evidence of alienage:

> Although neither a deportation order, see United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (citing United States v. Ortiz-Lopez, 24 F.3d 53, 55 (9th Cir. 1994)), nor the defendant's own admissions, see United States v. Hernandez, 105 F.3d 1330, 1332 (9th Cir. 1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez-Cortez's prior **deportation order**, **admissions Ramirez-Cortez made in his underlying deportation proceeding**, and the testimony of an INS agent that his review of Ramirez-Cortez's immigration records reflected that Ramirez-Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez-Cortez was an alien. Cf. United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (finding sufficient evidence of alienage where the government's evidence consisted of a prior **deportation order**, the defendant's admissions to an INS agent that he was a Mexican citizen, and his **admissions during the deportation hearing** that he was not a United States citizen); United States v. Contreras, 63 F.3d 852, 858 (9th Cir. 1995) (holding that sufficient evidence supported the conviction when the government introduced a prior **deportation order**, the **deportation hearing transcript**, which indicated that the defendant admitted

> his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen).

United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (9th Cir. 2000) (emphasis added).

The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63 F.3d at 858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's § 1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the **deportation hearing**, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the **order to show cause** and an **advisement of rights form**, which Sotelo signed. The advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the warrant of deportation, evidencing Sotelo's actual deportation.

109 F.3d at 1449 (emphasis added). Regarding the warning to alien ordered deported, it is admissible as evidence of Miguel Fimbres' intent to enter the United States illegally and lack of mistake.

Finally, as noted previously, in Loyola-Dominguez, the Ninth Circuit rejected any argument that admission of the A-File documents violates his Sixth Amendment right to confront witnesses. Id. at 1318. Nothing has changed. See Bahena-Cardenas, 411 F.3d at 1074-75. Thus, the Crawford holding does not affect the admissibility of statements that qualify for admission under those hearsay exceptions.

The United States will seek to admit the A-File documents as a nontestimonial business records and public documents. Therefore, any Confrontation Clause argument should be rejected. Accordingly, the Court should allow the United States to admit documents from Defendant's A-File.

## XIV

## THE A-FILE CUSTODIAN MAY TESTIFY REGARDING A-FILE RECORDS

The United States intends to call an immigration agent as the custodian of Defendant's A-File. This testimony about the contents of the file, record-keeping procedures, and the meaning of certain documents will be based on personal, on-the-job experience. See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese observations are common

enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent "served as the conduit through which the government introduced documents from INS' Alien Registry File".). The procedure has been implicitly approved by the Ninth Circuit in numerous § 1326 prosecutions. See, e.g. United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000); Loyola-Dominguez, 125 F.3d at 1318.

**XV**

**UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

As of the date of the preparation of these motions, no Defendant has produced any reciprocal discovery. The United States requests that Defendants comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendants. Defendants have not provided the United States with any documents or statements. Accordingly, the United States will object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

**XVI**

**CONCLUSION**

For the above stated reasons, the United States respectfully requests that its motions in limine be granted.

DATED: April 24, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/Christopher M. Alexander*
CHRISTOPHER M. ALEXANADER
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Christopher.M.Alexander@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CESAR RICARDO FIMBRES-PEREZ (1),<br>OLIVIA FIMBRES-PEREZ (2),<br>MIGUEL FIMBRES-PEREZ (3),<br>Defendants. | Criminal Case No. 08CR0021-DMS<br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Motions in Limine, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Michelle Betancourt, Esq.
   Atty for Defendant Cesar Fimbres

2. Ezekiel Cortez, Esq.
   Atty for Defendant Olivia Fimbres

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 24, 2008.

*s/Christopher M. Alexander*
CHRISTOPHER M. ALEXANDER