**MICHELLE BETANCOURT**
California Bar No. 215035
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
michelle_betancourt@fd.org

Attorneys for Mr. Fimbres-Perez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE DANA M. SABRAW)**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>CESAR FIMBRES-PEREZ,<br>Defendant. | CASE NO. 08CR0021-DMS<br>DATE: April 30, 2008<br>TIME 2:00 p.m.<br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONSE AND OPPOSITION TO GOVERNMENT'S MOTIONS IN LIMINE |

## I. BACKGROUND

Mr. Fimbres-Perez hereby incorporates the background statement of facts previously filed.

## II.

## THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 404(B).

Rule of Evidence 404 does not permit the introduction of character evidence to prove "action in conformity therewith." Fed. R. Evid. 404(a). Rule 404(b), however, permits the introduction of "other crimes, wrong, or acts" where the proffered evidence would show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). If the defense requests it, Rule 404(b) requires the government to provide notice of the "general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b). Failure to provide notice or obtain an excuse from the

district court, renders the other acts evidence inadmissible, whether the evidence is used in the prosecution's case-in-chief or for impeachment. Vega, 188 F.3d at 1154-1155.

For such evidence to be admissible, the government must establish that it is relevant to prove one of the exceptions to 404(b), that is, that the evidence is relevant to the issue of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Because of the great risks associated with admitting prior-act evidence, the admissibility of such evidence is determined through a four-part test examining whether: (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) the act is similar to the offense charged (for cases where knowledge and intent are at issue). United States Mayans, 17 F.3d 1174, 1181 (9th Cir. 1994).

The government's notice of proffered evidence must be sufficient and must specify the way in which the proffered evidence is admissible under Rule 404(b). A " broad statement merely invoking or restating Rule 404(b) will not suffice." United States v. Morales-Quinones, 812 F.2d 604, 612 (10th Cir. 1987). Rather, proper notice requires "[t]he Government . . .[to] carry the burden of showing how the proffered evidence is relevant to one or more issues in the case; specifically, it must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982).

Here, Mr. Fimbres-Perez was not given any advance Notice by the government of its intent to introduce evidence pursuant to FRE 404(b). The government's motions in limine indicates that it intends to introduce the fact that Mr. Fimbres has an outstanding warrant and that he lived in Mexico. Mr. Fimbres has not received any documentation to support either allegation, certified or not. Thus, it is the only articulation of its theory with respect to its admissibility. Its "notice," however, simply re-states Rule 404(b), and thus wholly is insufficient under Morales-Quinones. Moreover, it relies on an inference that is not permitted by Rule 404. Under the government's theory, "[Mr.] Fimbres-Perez' warrant makes it more likely that he was knowingly aiding the entry of Miguel Fimbres since Cesar Fimbres was risking arrest to do so. He was not simply messing with Border Patrol. Thus, this evidence should be admitted pursuant to Rule 404(b) pro prove knowledge, intent and absence of mistake or accident."

.

Significantly, the government relies on Mr. Fimbres-Perez' **knowledge** of the warrant as a basis for admission. However, the government has proffered no evidence that Mr. Fimbres-Perez was even aware of the existence of the warrant or his motivation for living in Mexico. The government's conclusions as to Mr. Fimbres-Perez' motivation for being in Mexico are merely speculative. In Huddleston v. United States, 485 U.S. 681 (1988), the Supreme Court held that the government must offer sufficient evidence for a jury to reasonably conclude that the defendant committed the prior act. Here, the Government has not made the necessary predicate showing of Mr. Fimbres' knowledge of the warrant.

This is not to say, however, that the Government may parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo. Evidence is admissible under Rule 404(b) only if it is relevant. "Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." Advisory Committee's Notes on Fed. Rule Evid. 401, 28 U.S.C. App., p. 688 In the Rule 404(b) context, similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor. Huddleston v. United States, supra, 485 U.S. at 689 (emphasis added). The government merely states that there is evidence of the existence of the warrant. Its theory, such as it is, does not depend on the existence of the warrant but rather explicitly depends on Mr. Fimbres-Perez' knowledge of the warrant. After all, that is how the government leads to its speculation about Mr. Fimbres-Perez' motivation for living in Mexico. While there may proof that a warrant exists, there is none that Mr. Fimbres-Perez was aware of it.

More importantly, Rule 404(b) is subject to the Rule 403. If the Government were to introduce the evidence of the warrant, Mr. Fimbres would have to defend against his knowledge of it. That would be a needless waste of time, regarding a collateral matter. Additionally, admission of such evidence would mean sanctioning an of argument by the government that people who reside in Mexico, United States citizen or not, are more likely to commit a crime than those who do not--an argument that this Court should reject outright.

It is obvious the prejudice inherent in the admission of a criminal warrant. Allowing the jury to know about a possible warrant has the potential of allowing them to use it as character evidence. Indeed, it is an inference even the Government in its memorandum was unable to resist. The government explicitly

argued that "such evidence of prior **misconduct** should be admitted." Gov't In Lim at 8. The government clearly focuses on the "misconduct"--the bad nature of the evidence it intends to proffer rather than a viable theory of relevance. It undercuts its own argument (which, is tenuous at best) that Mr. Fimbres-Perez' warrant leads to a conclusion that his actions show knowledge and intent to violate the laws. Indeed, that premise relies on an impermissible inference that the "misconduct"-as the Government puts it--of having a criminal warrant leads to further criminal behavior. The Rules of Evidence clearly forbid that inference.

## III.

## STATEMENTS CONCERNING THE SMUGGLING ARRANGEMENT ARE INADMISSIBLE

As an initial manner, Mr. Fimbres has no idea who the witness the government intends to call is or what testimony the government is expecting to introduce. Vague references to "a witness" and to statements that were "overheard" are not sufficient for Mr. Fimbres to properly challenge the admission of evidence. Moreover, the Confrontation Clause forbids the use of hearsay against a criminal defendant at trial, if the defendant is not afforded the right to confrontation. See Crawford v. Washington, 124 S. Ct. 1354 (2004). Under Federal Rule of Evidence 802, hearsay statements are inadmissible unless one or more hearsay exceptions apply. When a statement involves multiple levels of hearsay, each level must be independently admissible for the statement to come into evidence. Fed. R. Evid. 805.

Based on the generalizations by the government, there is no hearsay exception that applies. Additionally, admission of any such statements should be precluded based on a Rule 16 violation. This Court should exclude all of these statements at trial.

If the Court is inclined to entertain the admission of these statements, Mr. Fimbres requests an evidentiary hearing to determine whether in fact as such statements are true con-conspirator statements. See Bourjaily v. United States, 483 U.S. 171(1987)

## IV.

## THIS COURT SHOULD PRECLUDE THE INTRODUCTION OF THE A-FILE DOCUMENTS TO PROVE ALIENAGE

Once again, Mr. Cesar Fimbres is objecting to the admission of this evidence is a vacuum because Mr. Fimbres-Perez has not received any "A-file" documents.

Notwithstanding the Ninth Circuit's holding in United States v. Zavala-Herrera, 273 F.3d 1213, 1217 (9th Cir. 2001), Mr. Fimbres-Perez objects the use of the A-file documents as evidence of Miguel Fimbres' alienage. Such evidence is hearsay in this context and violates Mr. Fimbres-Perez's right of confrontation. Additionally, as outlined above, Crawford v. Washington specifically mandates that testimonial pre-trial statements may not be used against a defendant at trial where the defendant has not had a chance to cross examine the declarant. 124 S.Ct. 1354 (2004). Thus, no such A-file documents should be introduced to prove alienage.

**A. The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish the Fact of the Deportation.**

Mr. Fimbres-Perez expects that the Government will seek to introduce a warrant of deportation and an order of deportation to establish the fact of Miguel Fimbres' deportation. These two documents are admissible **only** to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir. 1980). Neither the warrant of deportation or the order of deportation reflect the "objective, ministerial fact" of alienage, and so, neither are admissible under Fed. R. Evid. 803(8)(B) to establish the fact of alienage.

Both the warrant of deportation and the order of deportation reflect the ministerial fact of the *deportation*, not Miguel Fimbres' alienage. As the Ninth Circuit has explained:

> ***Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.*** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added). Indeed, alienage is not a fact that is observed; it is a fact that is "found" by an INS official after an administrative hearing. Because the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing, it is not admissible under Fed. R. Evid. 803(8) or Fed. R. Evid. 401 to establish the fact of alienage. Likewise, because the warrant of deportation reflects only that an immigration judge found Miguel Fimbres to be an alien after an administrative hearing and that Miguel Fimbres may have been removed from the

United States after that deportation, it has no bearing on the fact of alienage, and it is also inadmissible under Fed. R. Evid. 803(8) and Fed. R. Evid. 401 to establish the fact of alienage.[1] Finally, to the extent that this Court finds that these documents are relevant under Fed. R. Evid. 401, these documents should be excluded under Fed. R. Evid. 403.

Thus, because the warrant of deportation and the order of deportation are not admissible to establish the fact of alienage, these documents are admissible only for a limited purpose, and Mr. Fimbres-Perez accordingly requests this Court instruct the jury, pursuant to Fed. R. Evid. 105, that it may only consider these documents to establish the fact of the deportation and for no other purpose. Mr. Fimbres-Perez further requests that this Court redact these documents to exclude any and all reference to Miguel Fimbres' alleged alienage.

**B. None of the Other A-file Documents are Admissible under Any Rule of Evidence.**

Mr. Fimbres-Perez anticipates that the Government may seek to admit other documents from the A-file, including the order to show cause why a person should not be deported and warnings regarding the possible penalties for reentry. None of these documents from the A-file are admissible to establish any other matter at issue in this trial.

All documents from the A-file -- except the warrant of deportation and the order of deportation, as discussed, supra -- are irrelevant under Fed. R. Evid. 401; more prejudicial than probative, cumulative, and a waste of time under Fed. R. Evid. 403; and inadmissible hearsay under Fed. R. Evid. 803(8).

**1. The Order to Show Cause Is Inadmissible.**

---

[1] In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the Ninth Circuit stated summarily that A-file documents are admissible under Fed. R. Evid. 803(8)(B) to establish the fact of alienage. Because the court failed to set forth any reasoned discussion, because it failed to discuss the decision in Medina, and because it did not specify which documents from the A-file were admitted in Hernandez-Herrera's case, see id., it is thus not binding authority, and this Court must still address this issue. See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous facts"). In any event, Hernandez-Herrera never held that these documents were admissible under Fed. R. Evid. 401 or 403 or the Fifth and Sixth Amendments. See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

The order to show cause is inadmissible under Fed. R. Evid. 401, 403, and 803(8). The order to show cause is a document that provide an alien with *notice* of the grounds for removal. It does not record the "objective, ministerial fact" of alienage any more than an indictment provides an objective observation that a person committed a crime. This document is nothing more than an *accusation* that the government must prove in an immigration proceeding. Thus, this Court should preclude the admission of the order to show cause.

**2. The Warnings of Possible Penalties Is Inadmissible.**

Likewise, the warnings of possible penalties is inadmissible under Fed. R. Evid. 401, 403, and 803(8). The warning contains boilerplate statements (drafted by the INS) regarding the penal consequences to an alien who illegally reenters the country. It has no bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This document contains inadmissible hearsay; it is irrelevant and more prejudicial than probative. It also must be excluded at trial.

**3. If this Court Finds These Documents Are Somehow Relevant, They Are Not Admissible to Establish Alienage, and Thus, This Court Should Provide the Jury With a Limiting Instruction.**

To the extent that this Court finds any A-file document relevant to some point, they are not admissible to establish Miguel Fimbres' alienage, and this Court should redact these documents to exclude all references to alienage and, pursuant to Fed. R. Evid. 105, instruct the jury as to the limited value of such documents.

**C. This Court Must Preclude the Admission of the A-file Documents to Establish Alienage to Protect Mr. Fimbres-Perez's Constitutional Rights.**

This Court must preclude the admission of the A-file documents to establish the fact of alienage to protect Mr. Fimbres-Perez's rights to confrontation of witnesses and to a jury trial based upon proof beyond a reasonable doubt, as guaranteed by the Fifth and Sixth Amendments. Specifically, because the right to confrontation is not applicable in immigration proceedings, the government may have met its burden of proving alienage based upon otherwise inadmissible hearsay. Cunanan v. INS, 856 F.2d 1373, 1374 (9th Cir. 1988). Because a criminal defendant never has the opportunity to confront those witnesses upon whose hearsay statements the immigration judge may have relied, the admission of the INS' evaluation of alienage deprives a defendant of his right to confront the witnesses against him.

In addition, in immigration proceedings, the government need only establish alienage by clear and convincing evidence. Murphy v. INS, 54 F.3d 605, 608-610 (9th Cir. 1995). Once the government has established a person's foreign birth, the burden shifts to the purported alien to establish, by a preponderance of the evidence, that he falls within one of the statutory provisions for derivative citizenship. Id. Given the lower burden of proof and the shifting presumption, the admission of these documents against a criminal defendant to establish the fact of alienage has the effect of lowering the government's burden of proving alienage in the criminal trial.

Finally, a determination of alienage by a quasi-judicial decision-maker represents powerful evidence of an element of the offense, and it creates a substantial risk that the jury will give this evidence undue weight or conclusive effect. Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th Cir. 1993) (internal quotations omitted) (stating "judicial findings of fact 'present a rare case where, by virtue of there having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'"); Fed. R. Evid. 803(22), Advisory Committee Note (observing that "it seems safe to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory explanation"). The Government's introduction of a government agency's finding of alienage to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval. The admission of this factual finding accordingly undermines a defendant's constitutional right to a reliable jury finding of an essential element.

Hence, because the A-file documents are generated by the Government without the constitutional safeguards surrounding criminal proceedings, it is unconscionable and constitutionally untenable to authorize their admission, as evidence of alienage, in a criminal prosecution. This Court should exclude these documents in their entirety, or, to the extent they are admissible to prove some other fact, redact these documents to exclude reference to Miguel Fimbres' alienage and instruct the jury as to their limited relevance.

//

//

//

//

**V.**

**THIS COURT SHOULD LIMIT THE TESTIMONY OF THE I.N.S. CUSTODIAN OF RECORDS**

It is assumed that the Government will intend to present the evidence of a Senior Border Patrol agent who would testify about, "the purpose of the A-file, what documents are contained within the A-File and what those documents mean." Mr. Fimbres-Perez objects to a Senior Border Patrol agent advising the jury about the significance of the documents that are contained in the A-File. The jurors are the fact finders in this case--it is up to them to decide what evidence is credible and how much weight it should be given. A jury is surely going to give a great deal of weight to the testimony of a Border Patrol agent. However, that agent's testimony about what A-File documents "mean" is completely irrelevant to the factual issues that will be before the jury. Moreover, Crawford v. Washington requires that Mr. Fimbres-Perez have an opportunity to cross-examine a declarant before any of the declarant's statements can be introduced against him. 124 S.Ct. 1354 (2004). Since the meaning of documents written and prepared by others-- the affidavits and other testimonial statements contained in the A-file--will be the subject of the custodian's testimony, such testimony violates Mr. Fimbres-Perez's confrontation clause rights and should be prohibited.

Furthermore, any testimony elicited by the government regarding computer checks that were performed by government agents violate Mr. Fimbres-Perez's confrontation rights, as no discovery regarding such searches has been produced and Mr. Fimbres-Perez thus has no meaningful way to cross-examine government witnesses regarding such computer searches. Testimony regarding such results would also be irrelevant and overly prejudicial and would constitute hearsay, but would be devoid of the requisite indicia of reliability to be admissible at trial.

//

//

//

//

//

//

//

**VI.**

**CONCLUSION**

For the reasons stated above, Mr. Fimbres-Perez moves this Court to grant his motions.

Respectfully submitted,

/s/ *Michelle Betancourt*

Dated: April 28, 2008

**MICHELLE BETANCOURT**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Fimbres-Perez